IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TAMARA SMOUT and DONALD STALLSWORTH,<br><br>Plaintiffs,<br><br>vs.<br><br>BENEWAH COUNTY, a political subdivision of the State of Idaho, BENEWAH COUNTY SHERIFF'S DEPARTMENT, a department of Benewah County, BENEWAH COUNTY SHERIFF, in his individual and official capacity, BRIAN RODNEY DICKENSON,[1] in his individual and official capacity, ED WHITE, individually, NAKKII "NICK" WHITE, individually, and JOHN or JANE DOES #1–10, employees of the Benewah County Sheriff's Department,<br><br>Defendants. | 2:18–cv–00136–DWM<br><br>OPINION & ORDER |

    This civil rights case arises out of a landlord-tenant dispute in northern Idaho. After judicial eviction proceedings, Donald Stallsworth and Tamara Smout were ordered to vacate their rental property by October 1, 2016. On October 2, property owner Nakkii "Nick" White and his father Ed White called the Benewah County Sheriff's Department to report that Smout and Stallsworth were still on the

---

[1] The caption is updated with the correct spelling of Dickenson's last name.

1

property. Deputy Rodney Dickenson cited Smout and Stallsworth for trespassing and seized contraband and personal items from their mobile home. Smout and Stallsworth sued Benewah County, the Sheriff's Department, the Sheriff, and Deputy Dickenson (collectively, the "County Defendants") under 42 U.S.C. § 1983, claiming violations of the Fourth and Fourteenth Amendments. They also brought state law claims against the County Defendants and the Whites.

Pending before the Court are the County Defendants' and the Whites' motions for summary judgment, (Docs. 31, 32), and Smout and Stallsworth's motions to add a punitive damages claim and exclude certain evidence, (Docs. 43, 44). The parties have not requested a hearing and the matter is appropriate for decision on the briefs. Dist. Idaho Loc. Civ. R. 7.1(d)(1)(B). For the following reasons, the County Defendants' motion is granted on the § 1983 claims. Supplemental jurisdiction over the remaining state law claims is declined, mooting the other motions.

## FACTUAL BACKGROUND[2]

Stallsworth and Smout owned a mobile home located on rented land in Plummer, Idaho. (Doc. 34-4 at 29, 32.) After suffering various health problems, they fell behind on their rent, which led to judicial eviction proceedings. (*Id.* at 34,

---

[2] The facts are from the summary judgment record, (Docs. 31-3 to 31-11, 32-3, 32-4, 34-1 to 34-4), and are construed in favor of Stallsworth and Smout, *Tolan v. Cotton*, 572 U.S. 650, 657 (2014) (per curiam).

50, 56–59.) On September 12, 2016, they were ordered to vacate the property and remove their mobile home by October 1, 2016. (Doc. 31-3 at 2.)

On October 2, 2016, the Whites arrived to find Stallsworth loading a U-Haul van. (Doc. 34-4 at 35–36.) The Whites waited on the corner and called the Benewah County Sheriff to report a trespass. (*See id.* at 7, 9, 25, 35–36; Doc. 31-4 at 2.) Deputy Dickenson arrived at about 2:15 p.m. (Doc. 31-4 at 3.) He spoke with the Whites for 30 to 45 minutes, during which Nick White explained that Stallsworth and Smout should have already vacated the property. (Doc. 34-4 at 7, 37.) According to Deputy Dickenson, White did not have a copy of the eviction order and dispatch was unable to get one from the court because it was a weekend. (Doc. 31-4 at 2.)

Eventually, Deputy Dickenson and the Whites approached Stallsworth in the mobile home's yard. (Doc. 34-4 at 37, 44.) Stallsworth did not have a copy of the eviction order either, but he acknowledged that it required him to vacate the property by October 1. (*Id.* at 7, 38; Doc. 31-5 at 3.) He claimed to have permission from the property management company to be there an extra day, though this could not be confirmed. (Doc. 31-5 at 3; Doc. 31-6 at 5; Doc. 34-4 at 36, 44.) Deputy Dickenson cited Stallsworth for trespassing. (Doc. 34-4 at 45.) Deputy Dickenson then knocked on the mobile home's door to cite Smout for trespassing. (*Id.* at 45, 53.) In the mobile home, Deputy Dickenson noticed a

3

marijuana pipe. (*Id.* at 37, 44.) He asked Stallsworth if there was other drug paraphernalia in the residence. (*Id.*) Stallsworth turned over a tin of paraphernalia from his son's bedroom. (*Id.* at 44.)

At some point Stallsworth and Smout asked about collecting their personal property but Deputy Dickenson and Nick White would not allow them to remove anything from the premises. (*Id.* at 37, 45, 51, 54.) Stallsworth specifically recalls asking about clothes for Smout and Deputy Dickenson responding that everything was in Nick White's possession. (*Id.* at 45.) Stallsworth also recalls that Nick White unloaded the U-Haul van so it could be driven away empty. (*Id.* at 37.) Stallsworth and Smout left about an hour after Deputy Dickenson arrived. (*Id.* at 44–45.) Overall, Stallsworth recalls speaking with Deputy Dickenson for around five minutes outside the mobile home, when he was cited for trespassing, and for around three minutes inside about the paraphernalia. (*Id.* at 44–46.)

Around the time Stallsworth and Smout were leaving, Deputy Dickenson asked Nick White for permission to search the mobile home. (*Id.* at 7; Doc. 31-5 at 4.) He seized additional drug paraphernalia, including various pipes and bongs, snort tubes, baggies, electronic scales, and a small amount of methamphetamine. (Doc. 31-9 at 2–3; Doc. 34-4 at 10.) He also collected personal items, including a birth certificate, for safekeeping. (Doc. 31-9 at 3; Doc. 34-4 at 12.)

Over the next few months, Stallsworth and Nick White, with difficulty,

4

arranged the return of some of the personal property that was left on the rented premises. (Doc. 34-4 at 40.) On March 13, 2019, the Sheriff's Department contacted Stallsworth and Smout about the personal property that Deputy Dickenson had seized for safekeeping. (Doc. 34-1 at 4; Doc. 34-2 at 4.) Until then, Stallsworth and Smout were unaware that the Sheriff held any of their belongings. (Doc. 34-1 at ¶ 4; Doc. 34-2 at ¶ 7.) On April 17, 2019, Stallsworth and Smout retrieved a safe, a cell phone, prescription medications, a birth certificate, and various debit cards from the Sheriff. (Doc. 34-1 at 5–8; Doc. 34-2 at 5–8.) They were never prosecuted for trespassing. (Doc. 34-4 at 9.)

## PROCEDURAL BACKGROUND

On May 9, 2018, Smout and Stallsworth filed this lawsuit. (Doc. 3.) They bring three claims under 42 U.S.C. § 1983, alleging that the search of their mobile home and seizure of their personal property violated the Fourth and Fourteenth Amendments (Claim One), that the County is liable for the constitutional violations under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) (Claim Two), and that the taking of their personal property violated their Fourteenth Amendment right to procedural due process (Claim Three). They also allege state tort claims against all defendants (Claims Four and Five), and that the Whites are liable for conversion and violations of the Idaho Manufactured Home Residency Act (Claim Six). On August 12, 2019, the County Defendants and the

5

Whites moved for summary judgment on all claims. (Docs. 31, 32.) On December 16, 2019, Stallsworth and Smout moved to add a punitive damages claim against the Whites and to exclude evidence of the illegal drugs and contraband in the mobile home. (Docs. 43, 44.)

**LEGAL STANDARD**

Summary judgment is proper "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, a court must construe all facts and reasonable inferences in favor of the nonmoving party but must not weigh evidence or make credibility determinations. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

**ANALYSIS**

**I.    Fourth Amendment Claim**

The Fourth Amendment generally prohibits warrantless searches and seizures. U.S. Const. amend. IV. Deputy Dickenson argues that he did not violate the Fourth Amendment and that, in any event, he is entitled to qualified immunity. "[Q]ualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted). A right is

clearly established if its "contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." *Plumhoff v. Rickard*, 572 U.S. 765, 778–79 (2014). The inquiry must be "particularized to the facts of the case," not undertaken at a "high level of generality." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (internal quotation marks omitted). Though there need not be a case directly on point, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011).

The qualified immunity analysis has two-prongs: (1) whether the official violated a constitutional right, and (2) whether the right was clearly established. *Tolan v. Cotton*, 572 U.S. 650, 655–56 (2014) (per curiam). Courts have discretion to address either prong first. *Pearson*, 555 U.S. at 236. In some cases, "it is plain that a constitutional right is not clearly established but far from obvious whether in fact there is such a right." *Id.* at 237. In other cases, it "may be difficult to decide whether a right is clearly established without deciding precisely what the existing constitutional right happens to be." *Id.* at 236 (citation omitted). This case mostly falls into the former category, especially given uncertainty about the relationship between state property law and the Constitution. *See United States v. Sledge*, 650 F.2d 1075, 1081–82 (9th Cir. 1981).

Here, Stallsworth and Smout allege that Deputy Dickenson violated their

7

Fourth Amendment rights by (1) searching the mobile home, (2) seizing personal items, (3) participating in Nick White's seizure of the mobile home, and (4) seizing their persons, all without a warrant. Deputy Dickenson is entitled to qualified immunity on the first three alleged violations because he did not violate clearly established law. He is entitled to summary judgment on the last alleged violation because he did not unlawfully seize Stallsworth and Smout.

### A. Search of the Mobile Home

After citing Stallsworth and Smout for trespassing, Deputy Dickenson searched the mobile home with Nick White's consent. (Doc. 31-5 at 4; Doc. 34-4 at 7.) The Fourth Amendment's warrant requirement does not apply if law enforcement receives voluntary consent to conduct a search. *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990). "A third party's consent to the search of another's belongings is valid if the consenting party has either actual or apparent authority to give consent." *United States v. Ruiz*, 428 F.3d 877, 880 (9th Cir. 2005). Actual authority exists when the third party has been authorized by the owner to consent or has shared use, access, and control over the area to be searched. *Id.* Apparent authority exists if the officers who conducted the search "reasonably believed that the person from whom they obtained consent had the actual authority to grant that consent." *United States v. Welch*, 4 F.3d 761, 764 (9th Cir. 1993).

It is not clearly established that a landlord with a judgment for eviction on

8

real property cannot consent to a search of the tenant's mobile home or other personal property left on the rented premises. Indeed, district courts in this Circuit generally recognize that a landlord *can* consent to a search of rented premises after the tenant has been properly evicted. *United States v. Almashwali*, No. 1:16-cr-00127-DAD-BAM, 2017 WL 999224, at *2 (E.D. Cal. Mar. 14, 2017); *United States v. Allen*, No. C-11-00286-CRB, 2012 WL 707439, at *3 (N.D. Cal. Mar. 5, 2012); *United States v. Botelho*, 360 F. Supp. 620, 625 (D. Haw. 1973). The wrinkle here is that the rented premises consisted only of the real property; Stallsworth and Smout retained title to the mobile home. There is no caselaw addressing a landlord's authority over a tenant's mobile home or other personal property that remains on the premises after a judgment for eviction has issued.

The only readily available case addressing the Fourth Amendment in the context of an eviction from a mobile home is *State v. Myers*, which determined that a sheriff did not violate the Fourth Amendment by entering a mobile home where he was executing a writ of possession. 942 P.2d 564, 567 (Idaho Ct. App. 1997). *Myers* involved a rented mobile home from which the tenant had been evicted, and therefore provides no guidance here. *Id.* at 565. Further, Stallsworth and Smout's reliance on *Chapman v. United States*, 365 U.S. 610 (1961), and *State v. Johnson*, 716 P.2d 1288 (Idaho 1986), is unavailing. Those cases establish only that a landlord cannot consent to a search of rented premises during the landlord-tenant

9

relationship. They do not address a landlord's consent after a valid judgment for eviction has been obtained. Because the scope of a landlord's authority to consent to a search of a mobile home and other personal property owned by an evicted tenant was not clearly established, Deputy Dickenson is entitled to qualified immunity on the claim regarding his search of the mobile home.

### B. Seizure of Contraband and Personal Items

After searching the mobile home, Deputy Dickenson seized drug paraphernalia and collected personal items for safekeeping. (Doc. 31-9 at 3; Doc. 34-4 at 10, 12.) Stallsworth and Smout argue that the seizure was the unconstitutional result of the illegal search. But because Deputy Dickenson is entitled to qualified immunity for the search of the mobile home, he is also entitled to qualified immunity for the resulting seizure.

### C. Seizure of the Mobile Home

Stallsworth and Smout contend that Deputy Dickenson effected the seizure of their mobile home by aiding Nick White with a self-help eviction. Much of their argument focuses on the procedure for enforcing a judgment for eviction under state law. They argue that White should have obtained a writ of execution. Idaho Code § 6-311C. They also note that Idaho's criminal trespass statute contains an exception for landlord-tenant relationships. § 18-7008(2)(a). But the question is not whether Deputy Dickenson or Nick White violated Idaho law; it is

10

whether Deputy Dickenson's participation in White's repossession of the premises amounted to an unconstitutional seizure of the mobile home.

State officials are liable under § 1983 when they cause another person's rights to be violated. *Harris v. City of Roseburg*, 664 F.2d 1121, 1125 (9th Cir. 1981). In the context of repossessions and evictions, officers who assist a landlord's unreasonable seizure can be liable for a Fourth Amendment violation. *See id.* at 1127; *Meyers v. City of Redwood*, 400 F.3d 765, 770–71 (9th Cir. 2005). The question is whether the seizure would have occurred absent law enforcement's participation. *See Harris*, 664 F.2d at 1125. The inquiry is fact-specific and depends on the totality of the circumstances. *Howerton v. Gabica*, 708 F.2d 380, 383–84 (9th Cir. 1983).

However, there are no cases addressing an officer's response to a landlord's report that a tenant is trespassing after a judgment for eviction has been obtained. The cases most frequently cited for the relevant legal standard, *Harris* and *Meyers*, involved repossession of vehicles before any judicial process and are therefore factually inapposite. 664 F.2d at 1125; 400 F.3d at 767–68. And, while the other cases cited by the parties involve evictions, they are also inapplicable. *Fournier v. Cuddeford* addressed an extended altercation among the landlords, tenants, and law enforcement, without judicial intervention. No. 3:11-CV-343-AC, 2012 WL 5921142, at *1–4 (D. Or. Nov. 26, 2012). The issue in *Howerton* was not the

officer's liability but whether the landlord could be liable as a state actor under § 1983. 708 F.2d at 382.

Deputy Dickenson may have violated Idaho law by issuing trespass citations despite the landlord-tenant exception, *see* Idaho Code § 18-7008(2)(a), and assisting the Whites absent a writ of execution, § 6-311C. But state property law does not control the Fourth Amendment analysis. *See Sledge*, 650 F.2d at 1082. Because a law enforcement's response to a trespass call from a landlord with a valid judgment for eviction has not been addressed in the Fourth Amendment case law, Deputy Dickenson is entitled to qualified immunity on the claim that he facilitated an unlawful seizure of the mobile home.

### D. Seizure of Stallsworth and Smout

Stallsworth and Smout contend that Deputy Dickenson unlawfully seized their persons during the interaction at the mobile home. "[A] person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *California v. Hodari D.*, 499 U.S. 621, 627–28 (1991) (internal quotation marks omitted) (alteration in original). Factors to consider include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's

request might be compelled." *Kaupp v. Texas*, 538 U.S. 626, 630 (2003) (per curiam) (internal quotation marks omitted).

Stallsworth and Smout do not cite any specific facts in the record to support their claim. Instead they generally argue that an armed sheriff's deputy refused to let them remove their personal property from the premises. (Doc. 34 at 15–16.) This does not amount to a seizure, particularly where the interaction with Deputy Dickenson at the mobile home lasted only eight minutes and Stallsworth agreed that Deputy Dickenson never touched him and was polite, respectful, and professional. (Doc. 34-4 at 44, 47.) Further, Stallsworth and Smout do not argue, and the law does not support, that a misdemeanor criminal citation is a seizure. *Karam v. City of Burbank*, 352 F.3d 1188, 1194 (9th Cir. 2003); *Martinez v. Carr*, 479 F.3d 1292, 1299 (10th Cir. 2007).

## II. *Monell* Claim

Stallsworth and Smout allege that the County Defendants are liable for the alleged Fourth Amendment violations under *Monell*, 436 U.S. at 694.[3] A local government is liable under *Monell* for constitutional violations that occur pursuant to its policy, custom, or practice. *Id.* Here, Stallsworth and Smout allege that the County Defendants are liable under *Monell* for maintaining inadequate polices on

---

[3] Stallsworth and Smout concede that they have only stated federal claims against the Sheriff in his official capacity. (Doc. 34 at 19 n.9.)

evictions and for failing to train employees on proper eviction procedures. Summary judgment is proper for the County Defendants on both theories.

### A. Policy and custom

To establish *Monell* liability on a policy and custom theory, Stallsworth and Smout must show "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Castro v. Cty. of L.A.*, 833 F.3d 1060, 1075 (9th Cir. 2016) (en banc) (internal quotation marks omitted). They must also demonstrate that the policy or custom reflected "deliberate indifference" to their rights. *Id.* at 1076. Deliberate indifference requires an objective showing that policymakers had "actual or constructive notice that the particular omission is substantially certain to result in the violation of the constitutional rights of their citizens." *Id.* (internal quotation marks omitted) (emphasis omitted). Stallsworth and Smout contend that the County Defendants' failure to maintain a written policy on writs of execution, (Doc. 34-4 at 62, 64), and failure to update the search and seizure policies, (Doc. 34-3 at ¶ 20), directly caused the alleged Fourth Amendment violations in this case. Assuming Stallsworth and Smout have made the requisite showing on causation, they have not produced any facts to support the deliberate indifference element. They argue only that the County Defendants were on notice that they might have to participate in evictions. (Doc. 34 at 20.) The rest of their argument relates to what Deputy Dickenson should have known and done

in this case. (*Id.* at 21.) There is nothing in the record to suggest that the County Defendants knew their policies, or lack thereof, might lead to constitutional violations. *See Castro*, 833 F.3d at 1076–77.

   B.   **Failure to train**

Failure to train can be the basis for *Monell* liability when it "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference in the failure to train context requires a "pattern of similar constitutional violations by untrained employees." *Connick v. Thompson*, 563 U.S. 51, 62 (2011). Here, Stallsworth and Smout's evidence of the County Defendants' failure to train employees is the opinion of their police practices expert that Deputy Dickenson lacked training and should have recognized the Whites' call to be a landlord-tenant dispute, (Doc. 34-3 at ¶¶ 7, 16), and Deputy Dickenson's testimony that he was unaware of the landlord-tenant exception to criminal trespassing, (Doc. 34-4 at 9). But even if Deputy Dickenson lacked training, Stallsworth and Smout have not shown that the County Defendants displayed deliberate indifference to constitutional rights in training other employees. Nor have they shown that the County Defendants' employees engaged in a pattern of constitutional violations. Stallsworth and Smout have thus failed to establish an essential element of *Monell* liability on a failure to train theory.

15

## III. Procedural Due Process Claim

Stallsworth and Smout allege that Deputy Dickenson's removal of personal items from the mobile home violated their Fourteenth Amendment right to procedural due process. To prevail on this claim, they must show "(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; (3) lack of process." *Portman v. Cty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). The amount of process that is constitutionally required depends on the interests at stake. *See Clement v. City of Glendale*, 518 F.3d 1090, 1093–94 (9th Cir. 2008). However, the government must give notice that property has been taken. *Lavan v. City of L.A.*, 693 F.3d 1022, 1032 (9th Cir. 2012). The general rule is that notice must be provided before property is taken, though post-deprivation notice may be acceptable depending on the circumstances. *Clement*, 518 F.3d at 1093–94.

Here, Stallsworth and Smout were not given *any* notice that their personal belongings were taken from the mobile home. (Doc. 34-1 at ¶ 4; Doc. 34-2 at ¶ 7.) Even so, Deputy Dickenson is entitled to qualified immunity because the notice requirements law enforcement must follow when collecting a tenant's personal items for safekeeping from a landlord are not clearly established. Stallsworth and Smout argue that clearly established law subjects household items to the protections of the Due Process Clause, citing *Fuentes v. Shevin*, 407 U.S. 67, 89

16

(1972).  But the issue here is notice, not whether the property at issue is constitutionally protected.  And though the Fourteenth Amendment's notice requirement is straightforward, for law to be clearly established, previous cases must be factually analogous and not merely convey generally applicable, or even obvious, principles.  *See White*, 137 S. Ct. at 552.  There is no readily available case law squarely addressing procedural due process when law enforcement collects property for safekeeping.

The closest case is *Blackburn v. Town of Kernersville*, in which law enforcement's seizure of cash was found to have violated procedural due process.  No. 1:14CV560, 2016 WL 756535, at *7–8 (M.D.N.C. Feb. 25, 2016).  The officers testified that they seized the money because it was drug related and that they took it for safekeeping.  *Id.* at *7.  In concluding that the seizure violated the Due Process Clause, the court only addressed the lack of probable cause that the money was drug related and did not address the safekeeping rationale, rendering the case inapposite.  *Id.* at *8.  The cases cited by the parties only address when government collects property to assert ownership and control over it, and do not address safekeeping.  *James Daniel Good Real Property*, 510 U.S. at 51–52; *Sanders*, 93 F.3d at 1428.  Deputy Dickenson is thus entitled to qualified immunity on the Fourteenth Amendment claim.

## CONCLUSION

IT IS ORDERED that the County Defendants' motion for summary judgment (Doc. 31) is GRANTED on Claims One, Two, and Three.

IT IS FURTHER ORDERED that Claims Four, Five, and Six are DISMISSED WITHOUT PREJUDICE on the ground that the Court declines to exercise supplemental jurisdiction, 28 U.S.C. § 1367(c)(3), and the remaining motions (Docs. 32, 43, 44) are DENIED AS MOOT.

IT IS FURTHER ORDERED that the Clerk of Court is directed to enter judgment for the County Defendants on Claims One, Two, and Three and close the case.

DATED this __6th__ day of April, 2020.

_____
Donald W. Molloy, District Judge
United States District Court